Good morning. We have 5 appeals that are scheduled for oral argument this morning. It's going to be a busy morning. And I see that counsel in the first case are ready to proceed. This is the United States of America v. Sefan Eberhard Zappey. Joel McDermott is here for the appellant Zappey. Gabriel Adam Lindo is here for the United States. And Mr. McDermott, you may begin your argument. Good morning, your honors. May it please the court, I'm Joel McDermott on behalf of Mr. Zappey. Mr. Zappey, your intuition before the court this morning, both of them pertain to the exclusion of testimony by his two expert witnesses on memory and case where that type of evidence made up the entirety of evidence of criminal conduct. Issue number one pertains to the exclusion of that testimony under Daubert, Rule 702. And issue two pertains to the exclusion of that testimony in light of the fact that the government was allowed to testify to similar and in some cases the same issues. Mr. Zappey contends that this was admissible under Daubert because juries don't commonly know this science. The science of memory and the science of the formation of false memories in a case where you're dealing with memories from the testifying witnesses that were 10 to 14 years old. Well, Dr. Talitsky testified to that, didn't he? And so it seems to me when we look at the record, and I know there was a proffer, anything that Dr. Nuschatz would testify to was already testified to by Dr. Talitsky, and so district judges have the discretion to avoid cumulative testimony, and we review that decision for an abuse of discretion. So I find it hard to believe that the district judge abused his discretion under those circumstances. Your Honor, it's a good question, but it's not true with the facts of the record. Dr. He did not get to testify about the formation of false memories and the vast storehouse of science that tells us how memories are easily formed even under simple circumstances. Well, Judge Batten seemed to be influenced by the fact that, you know, the average person understands that memories fade over time, and so the testimony has got to be of a certain persistence to the jury. And so people understand that childhood memories are malleable and they fade over time, and so why doesn't that testimony, if it was allowed, invade the province of the jury? Well, first of all, we were told you don't even need an expert to believe that, but even that prima facie truth turns out to be not true because people don't commonly understand how memory fades over time. It fades not simply fading away, it fades at a geometric rate. Juries don't know that. And beyond that, that's just a simple prima facie truth. The science goes much deeper than that. The experiment spanning 60 years now and virtually... But not studies specifically related to sexual abuse. I thought that was also the problem with Dr. Neuchatz is that none of his testimony would have related to actual instances of victims of sexual abuse. Your Honor, the reason for that is because they're not allowed in a lab setting to do that. It's unethically allowed. However, they have reproduced in many cases and in very simple circumstances, recognized in cases across every other circuit, that this can induce traumatic memories. People have formed false memories in cases that they've been attacked by a vicious dog. It never happened. That they were lost in the mall as a child and went through that trauma. But in this case, you had teachers who also testified to witnessing the touching that your client was accused of engaging in. No, absolutely not, Your Honor. You had teachers who testified to the fact that he was a very affectionate teacher who hugged the children, patted the children on the head, and things that made them feel in a professional setting... Ran his hands through their hair? Yes. Massaged their backs? Not through gun, Dr. Your Honor. It's not, but it's true that there were two other teachers and I guess a sergeant who had come in as a dental hygienist, all three of whom independently were concerned about that. Then there was the individual who had told her mother that he had touched her inappropriately and she had taken the child out of the class just a few weeks later. And she testified, I guess, that that had occurred. I mean, there was a lot of other evidence here. I disagree, Your Honor. If you take out the aged memory evidence in this case and put all the other evidence together, you have testimony of an affectionate teacher who made some people uncomfortable but did nothing criminal. That testimony would not support any criminal charge. Six victims testified. Six victims testified in the case. And so even if we agree with you that the judge should not have limited Dr. Talitsky's testimony and permitted Dr. Neustadt to testify, this case, it seems to me, rested pretty substantially on the testimony of the six victims who testified in this case that the jury chose to believe. Thank you, Your Honor. Correction, it was four victims testified to actual criminal conduct touching. But there were two others who said they were victims. Even if you include those, they were all testifying from aged memories. And if the memory science were allowed to come in, it could have created reasonable doubt. And we have case law in this circuit that says even eight compromised witnesses testifying against something would not prevent a harm. So let me ask you a question, though. I think below you conceded that if it came in here, it would have to come in in every case, which maybe that's not a problem. But I wanted to ask you about that concession. That was the government's argument. We didn't concede that as far as I know. That was the government's argument. And it is belied by the fact that all ten other circuits allow this kind of evidence in in these appropriate circumstances. All 50 states allow this kind of evidence in in appropriate circumstances. So let me put it this way. I don't disagree with you that the judge could have, within his discretion, allowed it in. But as you know, when we're talking about abuse of discretion, there's a wide range of conduct by the judge that would be permissible. And so even though the judge could have allowed it in, that doesn't mean the judge had to allow it in. Here, when I review the record, it looks to me like the judge allowed your expert to testify about everything that the government testified about. I think you're telling me that's not the case. And maybe you can just be a little bit more specific here about what it is in particular that the government's experts testified about. First, let me address the first point of what you said, and I'll address that directly. The first part is that the court could allow it in, but it doesn't have to. The rule in every other circuit is that under these circumstances, where the evidence of criminal conduct is only witness testimony from aged memories, that it is an abuse of discretion to keep it out, and it's harmful error. All right. What's your best case in support of that proposition? Your best case in support of that proposition? I'm hesitating only because I could give you many, and there are many in our brief. But U.S. v. Moore, and I cite that case specifically because that circuit changed its mind after only four years in 1982 of giving us the rule that bans eyewitness experts in this circuit. Yeah, that's a little different. It concerns eyewitness testimony and how eyewitness testimony changes over time, and how eyewitness testimony sometimes is unreliable. But here we're talking about childhood memories. This is different. I'm actually glad the court sees that. But certainly it's an analogous authority. And this is essentially a case of first impression in this circuit. So I'll have to get back to you on that as far as one that pertains to sexual. But you can look at the cases on all circuits. To your question specifically, the government's expert testified to what is called delayed disclosure. Delayed disclosure is the idea that children who are sexually abused routinely do not report until much, much later. And in fact, she said on the stand that the average age was 52. So consider 45 or 50 years of memory in those cases. And of course the hidden premise in that argument is that the memories are accurate from their childhood. And so we questioned her in cross-examination about repressed memory. And she said, this is her testimony, traumatic memories don't fade away over time. In fact, they get better because the person's ability to recall them gets better. So you were permitted to cross-examine Dr. Cooper about that. And the jury could weigh Dr. Cooper's testimony in your cross-examination. And, Your Honor, under U.S. v. Lankford, and this is our second issue, where the government's witness puts up evidence like that, an expert witness, it is an abuse of discretion not to allow an expert witness from the other side to testify on the same issues. And that was not our issue. It was logical to take what they're saying about delayed disclosure. And so that's a hidden premise in their argument. Surely we should be allowed to put up an expert to give the full science on the other side of that that showed no. 10, 20, 30, 40, 50 years out, there is so much on false memory creation and how easily it is done. But this was like 15 years out, right? How many years out? 10 and 14 years out. Okay. It could be one year, Your Honor. The red flags that form false memories were all apparent in the evidence in this case. It's all in the science. The jury would have been much more informed and in a better position to decide whether these memories were accurate or not. They would have known that the witness's reporting certitude doesn't correlate with the accuracy of memories. They would know that the formation of false memories is quite easy to do. Wasn't there testimony by your expert that the witness's certitude did not necessarily coordinate with accuracy? That's possible, Your Honor. I'm not certain at this point off the top of my head whether that was in the testimony or in the long sidebar where these questions were asked. The judge, when it came time to talk about the formation of a false memory, can a cue, this was the question that we wanted to ask to start with, can a cue cause a person to report a false memory? The judge said, absolutely not. You may not ask that. And I will take over the questioning from here and would not let our expert talk about anything. It was like you're playing a game of tennis and the one side keeps serving at you and you don't get to hit the ball back. And the bench was on their side, not letting us testify about the fullness of the science at all. And then he told us, you don't need an expert to tell them that memory fades over time. And then he said that's the only thing he'll let our expert testify to, essentially, aside from a few other basic things. And you're saying that that's not common knowledge, that as you age, your memory does fade over time? But when your memory involves being sexually abused, as these individuals allege, it sounds like that would be a traumatic event that would be less likely to be forgotten or constructed in some way. And that's all common understanding, Your Honor. But the science tells us much differently. And because we were prevented from putting that science before the jury, then we were hamstrung and sandbagged in the trial. And that's our position. And I'll reserve what time I have left, unless you have another question. All right. Thank you, Mr. McDermott. Mr. Mendel, you may argue on behalf of the United States. Good morning. May it please the Court. Gabriel Mendel for the United States. My colleague didn't have the benefit of being at this trial, and it's apparent from his argument. Because if the Court reviews the record, what it will see is a district court that did far from sandbagging a defendant, but in fact kept a very open mind about allowing this evidence in the pretrial discussion, in fact, denied the government's motions in total and said, I'm going to let this testimony in. And, of course, the district court is given considerable leeway in this area. Daubert gatekeeping function in this court reviews under a particularly deferential standard of review. And under that standard of review, the conviction should be affirmed. So here the district court did exactly what this court wants district courts to do. As I said, it kept an open mind, indicated it was inclined to admit all of this testimony. But then it heard the evidence. First, it heard live testimony from Zappi's four charged victims, each of whom testified that Zappi had sexually abused them while he was their elementary school teacher. Testimony that showed a common modus operandi and was corroborated by several Rule 414 witnesses, two other victims and three adults who witnessed behavior that was so concerning to them that they made repeated or, excuse me, repeated reports to the administration. But just as important is what the district court did not hear. There was no evidence that any of these victims had ever forgotten this abuse and only recalled it later, that they recanted. Well, there was some evidence that one of the victims there were two, I guess, two kinds of things in that department. Right. There was evidence that one of the victims said it happened once or twice and then later said it happened multiple times. And, you know, so that that's kind of a significant detail. And then there was the other testimony where one of the victims said that she told her mother after the event about what had happened. And then four years later, the mother still recommended Mr. Zappi as a teacher to a friend. So, I mean, that kind of suggests that, you know, there may have been some problems with at least some of the testimony. Your Honor, can cite those parts of the record shows that Mr. Zappi was allowed to attack their credibility through the appropriate method, which is through cross-examination, which is through pointing out factual evidence. But why? Why wouldn't it be appropriate to allow evidence on the idea that false memories can develop in a person based on a cue? Your Honor, if you look at, for example, Dr. Neuschatz's report, which was submitted as part of the record, the studies that he cites for that proposition, that you can come to believe you had been attacked by a dog or abandoned by a parent or abducted by aliens, are controlled studies where the participants are subjected to repeated questions, leading questions over a period of time, that some minority, 20 to 30 percent of them, then come to believe that something happened that didn't happen. That sort of scenario just didn't exist here. There are cases out there where you have what some people call repressed or recovered memories, where someone says, I didn't know what happened. I went to therapy or I went through a forensic interview and all of a sudden I remembered something happened. That type of study might be a fit there. So let me ask you a question. Counsel says, well, we couldn't have had controlled studies, obviously, on, you know, recovered memories from child sexual abuse because it would be unethical. Obviously, we're not going to purposely engage in some kind of sexual abuse of a child to determine whether or not you can implant these kinds of notions. What do you think about that? So there are two problems with the studies. One goes to the court's question, which is the nature of what memories were being falsely implanted are very different. But there's a second problem with respect to the fit of this case, which is that there was none of that type of questioning. There was no memory that didn't exist. And then there was questioning and the memory then existed. And so each of the four victims were questioned on direct examination by the government about this. Was there ever a point in time where you didn't remember this happened? And the answer for all four was no. Now, there came a point when they came to appreciate the wrongfulness. Right after the church videos. At various points throughout their adolescence, something that they learned about, some video they watched in Catholic school, or they learned about the Larry Nassar gymnastics that showed them this memory I have is a memory of sexual abuse. But there was no evidence that any sort of questioning implanted or provoked these memories. And so the district court was well. It's why discretion to say that's not a fit for this case. That's not helpful to the jury. Also, they respond to this idea that they were limited in presenting rebuttal evidence. The government's expert testified on the second day of trial. So this is not one to wait. That's true. Examination lasts 22 pages, pages five to twenty seven. About half of that is qualifications and experience. And the other half of that is on two topics. Delayed disclosure and grooming. The word memory is not mentioned a single time. And the delayed disclosure expert testimony is not about memory. It is about the fact that someone says I was abused, but I didn't report it for X number of years. Well, I mean, yes, technically, I guess that's true. But why isn't it fair to say that the reason it wasn't reported was because it didn't happen and it was a later memory that it's false? You could actually say it didn't happen. In fact, their expert was allowed to talk at length about delayed disclosure and rebut this idea that the disclosure in this case is somehow understandable. But to then say that that is a false memory and we need expert testimony to explain the jury, these studies where these fall. You still need some facts to lay the foundation for how that would have happened here when there's no evidence to suggest these victims were ever questioned. And the other thing I want to point out is if you look at what the court allowed, it's it's tremendous. And my colleague really understates what his experts his expert was allowed to testify about. His expert testified on the fourth day of trial. So it's page one of four dash four. His testimony is from 14 to 33. And there's this midtrial Daubert hearing. And from 85 to 98. And so in addition to delayed disclosure, in addition to grooming, he testifies about the formation of memories, the ways that memory gets flawed. Memory decay, the importance of salience, the importance of whether it was traumatic or not. Different forms of memory mistakes such as confabulation, post-event information and taint the encoding and decoding of memories. The effect that a witness's age and development have on memory, that memories of an event do not improve over time. Expert testimony on that topic from his witness. Inaccuracy of memories is more common for younger children. The government's objection allows all of that testimony in. But that places limits on what it determined either did not meet the defendant's burden under Daubert or was sufficiently misleading and confusing that it should be excluded under 403. But what's confusing about general evidence regarding the science of memory, which is what Dr. Neuschatz was proffering. It seems to me it might be cumulative or duplicative of what was already testified to. But I'm not sure how that would have been otherwise confusing, especially if it is just repeating testimony that the jury had already heard. So there are two separate problems with Dr. Neuschatz. One part of it is cumulative. And the part of the testimony he would have testified to would have been what Dr. Tolitsky testified to and to the extent the court allowed that. And it's really just cumulative. But there were other aspects, the false memory. And then there was this idea of imagination that if someone is told, go home and imagine this happened to you, that after a certain amount of time, some percentage of those people will believe it really happened to them. Again, no evidence in this record that anyone suggested to any of these victims go home and think about and imagine something happened to you. And that's what happened. Instead, you have four victims, charged victims, and then, of course, the 414 evidence, who independently identify this man as having sexually abused them. There was no evidence of leading questions, of an invasive interview. They did not talk to each other about any of this. None of them knew each other? Is that right? Some of them knew each other at the time. No. Three different facts overlapped. One was younger, and one didn't know any of the other three at all. But they were all questioned on direct and cross. Did you talk about this with each other? Do you even know who else is testifying today or in this trial? And the answer was no. Why weren't the other two who testified included in the indictment? So there's two. One is – it's a good question. I think maybe they should have been. I don't believe for either of them there was hand-to-genitalia, skin-to-skin contact, so it would have been lesser charges. And, of course, some of these witnesses are identified after the indictment, aren't necessarily part of it. But I think ultimately the four victims, because they suffered the same harm and, of course, had a common modus operandi, it was viewed as sufficient to charge those and use these other two to fit under what Rule 414 clearly allows. And there's no objection to that testimony at all. So because of the wide discretion the district court has and the deference that's owed to it, we would ask Mr. Zappi's convictions be affirmed. All right. Thank you, Mr. Mendo. Well, Mr. McDermott, you've reserved some time for rebuttal argument. You know, you might have a stronger case if we were talking about one or two victims. But we've got six witnesses. And so doesn't that weaken your argument that, you know, maybe there was a problem with regard to the memory? Maybe you've got six different victims who all have the same memory. They don't have the same memory. They have memories of allegedly independent events. There is evidence that they knew each other. There is evidence that they talked behind the scenes. Some of it came out of trial. There is evidence that there was a parent involved calling everybody in the class saying, Mr. Zappi is a child molester, talk to your children. There is evidence of all kinds of contamination in the interviews. Excuse me. Directed to your question, Your Honor, about the so-called six witnesses. Again, I would refer you to U.S. v. Hands in this circuit. It clearly says that where there are eight witnesses against the defendant, if those witnesses are compromised in any way, that can't be used for harmful error. So I don't think that goes to the weight here the way you suggested. The government says there is no evidence whatsoever in this case that anybody had ever forgotten. There's no evidence that this was repressed memory. I would refer, Your Honors, to the first volume of the trial record on page 69 at the bottom, Question 2, Anna DiCecco, one of the four victims. So it would be fair to say that when you met with Agent Joubert, Army CID, the first interview, you did tell him, I forgot this whole experience entirely. Answered, that's correct. And you didn't remember it until the ninth grade. Right. Your memory had been triggered.  Again. Doesn't she also testify, though, at trial that she had been taking an AP psych class and she misused some of the terms, but that's not what she actually meant? I don't remember if that was DiCecco or not, but even if that were the case, Your Honor, a psycho doesn't tell you the difference between I've completely forgotten and, oh, actually, no, I remembered it the whole time. There was testimony to what you're talking about, but it was in a slightly different issue or a slightly different context. Maeve Hennessey did the same thing. Did you think your memories were repressed? Answered, I think that's what your brain and your body does when something traumatic happens.  It doesn't allow you to remember those things on its own. But now that I have a lot of time to sit and really think about it, more things are coming to the surface. That is exactly the type of go-home-and-think-about-it that he said didn't exist in this case. That is exactly the type of rumination that the science of memory is. So maybe I have it wrong, and so you can let me know. I thought she testified that she didn't think there was anything wrong with it at the time because she didn't know any better. But then she went to, she saw a church video or something and realized that it was actually what had happened to her. Now she had a name for it. It was, you know, sexual molestation. To answer your question, Your Honor, they did say that after their first interviews, only after they met with the AUSAs and got ready for trial did they come up with these other answers to explain the way you suggested. I thought Mr. Zappi was sentenced to life in prison. He was. Okay. He's here today? No. Oh, okay. Oh, I'm sorry. Okay. I was confused. All right. Thank you. And I just want to clarify. So it seems that you are asking us to create a bright line rule and follow other circuits that have allowed this kind of testimony in. If we were to do that, how does the fact that, again, the evidence, the studies upon which Mr. Neuschatz was relying on don't specifically relate to child sexual abuse? I think the fact that they relate to various forms of traumatic experiences is enough to get that in. I think that's enough form of basis to where a jury could say, okay, well, because a jury would have the same question. This is a totally different ballgame than remembering lists of words. But when it gets to remembering traumatic experiences that never happened, having been arrested by the police and booked in jail, having run in with a vicious animal and stuff like that, and there are others in the studies. So you asked about a rule. May I give you the rule that I proposed? Judge, please. In a case where the sole evidence of criminal conduct is testimony of alleged childhood memories recalled multiple years after the alleged incident and the sole defense is flawed memories of the critical witnesses, it is unusual especially to exclude expert testimony regarding the accuracy of memory or false memory formation. You'll find a very close analog to that in U.S. v. Moore when it regards eyewitness testimony memory in the Fifth Circuit, 786 F2nd 1308. Thank you, Your Honor. Thank you, Counsel. The next case is Mark Schultz.